IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MIROSLAV STOLICA,

     Defendant.                           Case No. 09-cr-30047-DRH

## MEMORANDUM & ORDER

HERNDON, Chief Judge:

### I. Introduction

On February 27, 2009, defendant Miroslav Stolica was arrested by agents of the Secret Service and the Granite City, Illinois Police Department. Several days later, Defendant was transferred over to the custody of U.S. Immigration and Customs Enforcement ("ICE") officials where he was administratively detained for failure to comply with an ICE Order of Supervision.[1]  On May 5, 2009, Defendant was federally indicted (Doc. 1) for being a felon in possession of a firearm. He remained in ICE custody until May 11, 2009, when he made his initial appearance

---

[1] Defendant states that he is a non-deportable alien who is subject to an order of deportation, with his country of origin being Bosnia-Herzegovina. He remains on supervision while continuing to be subject to deportation, as ICE officials have yet to obtain the necessary documents from Bosnia-Herzegovina in order to deport him (Doc. 78, p. 3, n.2).

on the warrant on the Indictment (Doc. 6).  A Superseding Indictment was then filed

on August 5, 2009, containing the two further Counts for counterfeiting (Doc. 35).

Now before the Court is Defendant's Motion to Dismiss Superseding

Indictment (Doc. 47), to which the Government has responded in opposition (Doc.

68) and Defendant has replied (Doc. 78).  Defendant believes that the 67 days he was

detained by ICE officials under an "administrative" hold before he was federally

indicted by the Government should count against the 30-day period set forth in §

3161(b) of the Speedy Trial Act.  **18 U.S.C. § 3161(b)**.  In sum, Defendant asserts

that because the Government violated § 3161(b) of the Speedy Trial Act, the

Indictment (and also the Superseding Indictment) should be dismissed.  For reasons

discussed herein, the Court reserves its ruling on the Motion, finding that an

evidentiary hearing is necessary.

## II.  Discussion

A.      **Pre-Indictment Delay Under the Speedy Trial Act and the Ruse Exception**

Section 3161(b) of the Speedy Trial Act requires that "[a]ny information

or indictment charging an individual with the commission of an offense shall be filed

within thirty days from the date on which such individual was arrested or served

with a summons in connection with such charges."  The Government's failure to

comply with this 30-day time limit will result in the dismissal of the charges in the

complaint, with or without prejudice, as determined by the court.  **18 U.S.C. §

3161(a)(1)**.  The "offense" described in § 3161(b) refers to "any Federal *criminal*

offense." *Id.* § 3172(2) (emphasis added).  Thus, the 30-day limit set by § 3161(b) does not typically apply to arrests and detentions based on civil offenses.  *See United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008) (collecting cases).  In turn, an administrative detention by ICE officials will not, on its face, be considered an arrest in connection with a federal criminal offense necessary to trigger the Speedy Trial Act.  *See United States v. Guevara-Umana*, 538 F.3d 139, 141 (2d Cir. 2008) (collecting cases).

Although Defendant acknowledges that an administrative detention by ICE officials is "civil" in nature and therefore would not normally trigger the provisions of the Speedy Trial Act, in his particular case, Defendant argues that the Speedy Trial Act was triggered via the applicability of what is known as the "ruse" exception (Doc. 47, p. 3).  The ruse exception applies when civil officials collude with law enforcement authorities to administratively detain a defendant for the sole purpose of avoiding the requirements of the Speedy Trial Act.  *See, e.g., Guevara-Umana*, 538 F.3d at 142.  In effect, the administrative detainment is but "a mere ruse for later prosecution." *Pasillas-Castanon*, 525 at 997.  However, a defendant bears a high burden to convince a court that the ruse exception should apply.  It must be shown that the administrative civil detention was solely or primarily to hold a defendant for future criminal prosecution, prompted by the wrongful collusion between officials. *Id.* at 998 (citations omitted).  The ruse exception cannot apply if it is shown that civil officials had a lawful basis for administratively detaining a

defendant.  *Id.*

　　　　While the Seventh Circuit has not squarely addressed civil detention and its applicability to the Speedy Trial Act or the ruse exception, the majority of its sister circuits have adopted it.  *See id.* **(citing *United States v. Woolfolk*, 399 F.3d 590, 596 n. 7 (10th Cir. 2005); *United States v. Garcia-Echaverria*, 374 F.3d 440, 451 (6th Cir. 2004); *United States v. Dyer*, 325 F.3d 464, 468-69 (3d Cir. 2003); *United States v. Garcia-Martinez*, 254 F.3d 16, 19-20 (1st Cir. 2001); *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001); *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997); *United States v. Grajales-Montoya*, 117 F.3d 356, 366-67 (8th Cir.1997); *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir.1993)).**  Absent binding precedent showing otherwise, this Court believes that the Seventh Circuit would also likely adopt the ruse exception.

**B.　　Analysis**

　　　　Defendant argues that the ruse exception should apply here, believing that Secret Service Agent Davis colluded with ICE Agent Jeff Wagner to administratively detain Defendant solely for pending federal prosecution. In support, Defendant points to language in Agent Davis' report, which states that on February 26, 2009 – the day before Defendant's arrest – he contacted ICE Agent Wagner to brief him about the ongoing criminal investigation and Defendant's immigration status and was informed by Agent Wagner that Defendant "could be held at any given

time, 'administratively,' due to his deportation status" (Doc. 78, Ex. 1, p. 1).  From

this statement, Defendant concludes that ICE officials never had any intention to

detain him absent the ongoing criminal investigation conducted by Secret Service

agents and thus, his detainment was solely for the purpose of delay so that the

investigation could be completed (Doc. 47, p. 4).

In Response, the Government argues that the ruse exception should not

apply here, offering that ICE officials had a lawful basis for administratively detaining

Defendant, namely, for multiple violations of his ICE Order of Supervision (Doc. 68,

p. 2).  In particular, the Government states that Defendant was administratively

detained due to a previous failure to appear and his alleged criminal behavior.  To

substantiate this explanation, the Government attaches an ICE Order of Supervision

for Defendant (Doc. 68, Ex. 1) and an ICE Notice of Revocation of Release ("Notice"),

addressed to Defendant (*Id.*, Ex. 2).  The Notice informs Defendant that he will

remain in ICE custody for his "failure to abide by one or more conditions of your

prior order of supervision dated November 16, 2006" (*Id.*).  The Notice thereafter

describes Defendant's noncompliance as:

> On November 16, 2006 you appeared at the ICE office in St.
> Louis, Missouri and were instructed to appear on November 16,
> 2007 while continuing to report monthly by telephone. You failed
> to appear at the ICE office in St. Louis on November 17, 2007 as
> directed.[2]

*Id.*  The Notice is dated March 2, 2009, several days after Defendant's arrest.  It is

---

[2]  The Court notes that there is a discrepancy in this quoted text of the Notice regarding the
dates Defendant was instructed to appear at the ICE office in November 2007, but it is likely a
typographical error and not otherwise significant.

signed by the Field Office Director.  The Notice also states that Defendant would be afforded an informal interview and given the opportunity to respond to the reasons for the revocation.

The Court notes several potentially problematic issues with the evidence submitted by the Government to support its assertion that Defendant's administrative detention had a lawful basis.  First, the Notice references a November 16, 2006 Order of Supervision, however, the Order of Supervision attached to the Government's Response as Exhibit 1 is dated January 26, 2004.  Therefore, from what the Court can glean, Exhibit 1 appears to be the incorrect Order of Supervision. In the least, it requires further explanation from the Government as to whether Exhibit 1 relates to the Notice in any relevant way.  Second, also missing from the Government's three-page Response is a showing that ICE officials were of diligently prosecuting Defendant's revocation.  ***See, e.g., Pasillas-Castanon*, 525 at 998-99 (where the court found that substantial evidence produced by the Government to show that ICE was diligently prosecuting the defendant's administrative removal case refuted any inference of a collusion to avoid Speedy Trial provisions)**.[3]  At this time, the Court only knows that Defendant was held in ICE custody until he was federally indicted in this case.  There is no further information provided as to what became of Defendant's administrative revocation matter after his

---

[3] The Court is not finding that the Government must always make a sufficient showing of diligent administrative prosecution when a defendant raises the issue of collusion to avoid the Speedy Trial requirements, but rather, in this particular instance.

indictment to bolster the Government's position that the ruse exception should not apply.

Moreover, in his Reply, Defendant argues that the Notice was not in compliance with **8 C.F.R. § 241.4**, which deals with detainment of aliens and is referenced by the Notice itself.  Defendant points out that although the Government states that the reasons Defendant was taken into ICE custody include his association with criminals and alleged criminal activity, the Notice solely states that the basis for Defendant's detention was his failure to report to the St. Louis ICE office on November 17, 2007 (Doc. 78, pp. 3-4).  Therefore, Defendant challenges this basis as being pretextual.  Defendant does not contest the fact that the alleged criminal activity would be a legitimate basis for his detainment by ICE officials, however, he asserts that ICE officials never pursued any administrative remedies to this effect (*Id*. at p. 4).  He asserts that **8 C.F.R. § 241.4(l)(1)** requires the Notice to list the all the reasons which form ICE's basis for revoking Defendant's release (*Id*. at p. 5).  In support, Defendant attaches a previous notice of revocation he received back in 2003, which lists violations not only including failure to report to the ICE office, but also his alleged criminal conduct, as a basis for the revocation (*Id*. at p. 5, Ex. 5).

Additionally, Defendant observes that the Notice was signed by a Field Office Director, but according to federal regulations, should have been signed by either the Executive Associate Commissioner or a delegated district director.  **8 C.F.R. § 241.4(l)(2)** (*Id*. at p. 5).  Also in accordance with federal regulations,

Defendant argues that he was supposed to be given notice of his revocation and an initial informal interview when taken back into ICE custody so that he could respond to the reasons for revocation given in the Notice.  **8 C.F.R. § 241.4(l)(1)**.  Defendant maintains that he never received a copy of the Notice.  He points out that it is not addressed to his residence, but instead is addressed to "1222 Spruce St. Room 1.100, St. Louis, Missouri, 63103" (*Id*. at p. 4, citing Doc. 68, Ex. 2).  This location is the same as the address for the Office of Detention and Removal Operations and there is no indication of personal service (*Id*.).  Defendant also claims he was never given an informal interview as required by the regulations and thus never was able to explain his alleged violation of the Order of Supervision.  Giving his reasons, instead, in his Reply, Defendant explains that he attempted to report to the St. Louis ICE office in person on November 1, 2007, and attaches a letter that he left at the ICE office on that date, which he claims is part of his Alien File (*Id*. at p. 6, Ex. 7). Defendant attaches further correspondence to ICE officials subsequent to November 1, 2007, which he also claims is part of his Alien File and shows he maintained regular contact with ICE officials.  Defendant argues that ICE officials never attempted to revoke his release until contacted by the Secret Service in February 2009.

In reviewing the Parties' arguments, the Court notes that the timing of Defendant's revocation of release by ICE is a bit questionable, given that his failure to report occurred in November 2007, but it was not until February 2009 – the day after ICE was contacted by the Secret Service – that the Notice of Revocation was

issued.  Further, because the Notice does not list Defendant's alleged criminal activity as a basis for the revocation, it begs the question as to why the revocation did not occur nearer the time Defendant failed to report on November 17, 2007 – as that was the given basis for the revocation.  Such timing certainly lends credence to the notion that Defendant's administrative detention was only to buy Secret Service agents additional time to conduct a criminal investigation while avoiding Speedy Trial requirements.  However, the Court is certainly not prepared to make such a finding that Defendant's administrative detention was a mere ruse used to circumvent the Speedy Trial Act.  Instead, the Court believes it is likely that many of the issues raised herein can be explained by the Government, especially had the local rules allowed the Government to file a sur-reply.  Yet, since that is not the case, the Court finds an evidentiary hearing is necessary in order to hash out the above-identified problems.  Although the Government does not carry the burden of showing collusion, Defendant has reasonably called into question whether his administrative detention by ICE officials was, indeed, a mere ruse.  Therefore, the Government shall be required to rebut by showing, through proper evidence, including possible witness testimony, that there was lawful basis for Defendant's administrative detainment and that his immigration case was being diligently prosecuted.  Additionally, the Court reserves its ruling regarding Defendant's arguments for dismissal as to Counts II and III of the Superseding Indictment.

### III.  <u>Conclusion</u>

Accordingly, the Court reserves its ruling and hereby set an evidentiary hearing on Defendant's Motion to Dismiss Superseding Indictment (Doc. 47) for **Wednesday, December 9, 2009 at 1:30 p.m.**

**IT IS SO ORDERED.**

Signed this 3rd day of December, 2009.

/s/     David R Herndon
**Chief Judge**
**United States District Court**